CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Christopher A. Seabock, Esq., SBN 279640
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Daniel Lopez**,<br><br>　　　Plaintiff,<br><br>　v.<br><br>**Joel Mauricio Jaco**; and Does 1-10,<br><br>　　　Defendants. | Case No.: 2:18-cv-03269-MWF-JC<br><br>**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S TRIAL BRIEF**<br><br>Complaint Filed: April 19, 2018<br><br>Honorable Judge Michael W. Fitzgerald |

1

## I. Introduction

Defendant mentions in passing two new arguments in his Trial Brief: that "Plaintiff never encountered any violations entering the store or in the store" and that "he never attempted to enter the store when he was unable to park his van." Dkt. 55 at 1: 10-12. These points will be addressed following the defenses that were previously raised.

## II. Defendant's Lease Agreement

Defendant again cites his lease agreement, stating that it "begs the question of who is responsible for compliance with removal of the barriers." Dkt. 55 at 4:5-7. Defendant posits: "That obligation appears to fall directly on the landlord as the tenant is precluded from doing so without written consent, and the possibility of indemnification against the landlord does not resolve that issue." Dkt. 55 at 4:8-11.

However, and as laid out in Plaintiff's Trial Brief, the question of "who is responsible for compliance with removal of the barriers" has been answered by Congress, the Department of Justice, the Ninth Circuit, and legal analysists. Who is responsible? Both the landlord **and the tenant**, irrespective of any private agreements they may have between themselves. The terms of Defendant's lease, a private agreement to which the plaintiff is not a party, have no effect on the defendant's obligations to the plaintiff created by federal law. And Defendant has not put forth a single citation that refutes the statutes, case law, or analysis cited by Plaintiff in his Trial Brief. Defendant's position is unfounded.

### III. Unrelated Litigation

Defendant now argues that, because Plaintiff's counsel represented a different client several years ago who sued the then-property owner, "plaintiff knew the name of the owner and easily could have brought her into the instant litigation." Dkt. 55 at 5:8-9.

This ignores the practical reasons that both landlord and tenant be independently liable for ADA compliance, as cited in Plaintiff's Trial Brief:

> A customer should not have to obtain a copy of the lease and other contracts in order to determine who is the proper defendant. The customer should be able to bring an action, and let the tenant and landlord fight among themselves over who is responsible to pay for any required improvements.

Indep. Living Res. v. Oregon Arena Corp., 982 F. Supp. 698, 768 (D. Or. 1997) *supplemented*, (D. Or. 1998) 1 F. Supp. 2d 1159.

Moreover, the best information that Plaintiff has is that the owner of the property at the time of Mr. Carpenter's lawsuit, Consuelo Felix, has since passed away. At the time of Plaintiff's Rule 11 investigation, the new owner could not be identified based on property records. Defendant, on the other hand, is presumably making rent payments to the now-property owner and is in a far better position than Plaintiff to seek relief against that individual or entity.

## IV. Readily Achievable

### A. Parking

Defendant argues: "The parking lot is for all the tenants of the shopping center, and not just the defendants liquor store, and the landlord is responsible for the lot and its maintenance." Dkt. 55 at 4: 13-16.

First, the fact that the parking lot serves multiple businesses is irrelevant to the plaintiff's claims. Under the ADA, it is discrimination for "any place of public accommodation" to deny an individual "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" on the basis of the individual's disability. 42 U.S.C. § 12182(a). Defendant does not deny that parking is one of the services, facilities, privileges, advantages, or accommodations the Store offers. Therefore, Defendant is obliged to ensure the parking is accessible to persons with disabilities.

The other tenants utilizing the parking lot have the same obligation to individuals visiting their stores, but Plaintiff was not visiting those businesses.

Second, while the landlord may be "responsible for the lot and its maintenance" **under the lease**, that responsibility is a contractual one the landlord owes the tenant. However, the ADA creates a separate responsibility to provide accessible facilities to third parties with disabilities. That responsibility belongs to both the landlord and the tenant and is independent of whatever contractual relationships exist between them, as explained in Plaintiff's Trial Brief.

### B. Entrance Ramp

Defendant argues that extending the entrance ramp outside the Store would require a permit from the City, whereas extending the entrance ramp inside the Store would require the removal of some of the aisles. Dkt. 55 at 4:17-26.

This argument completely ignores the fact that the ADA contemplated imperfect access where full compliance was impractical. Under the ADA, discrimination includes the failure to take "alternative methods" toward compliance where full barrier removal is not readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v); 28 C.F.R. § 36.304(d)(3). Defendant makes no

reference to any alternative methods employed to address the inaccessible entrance ramp or why such methods would not be readily achievable. The inaccessible entrance ramp could be addressed by utilizing a portable ramp with compliant slope, by mounting a railing at the entrance for wheelchair users to stabilize themselves, or by installing a buzzer to request assistance at the entrance. However, Defendant's Trial Brief does not even address these options.

### C.     Merchandise Shelves

Defendant argues that rearranging the shelves to create a larger clearance "reduces defendant's inventory" and "would make it economically unfeasible to operate the store." Dkt. 55 at 4:28-5:3.

First, Defendant provides no explanation to these conclusory statements. Defendant does not explain how rearranging shelves would require his inventory to be reduced. And even if it is true that Defendant's inventory would necessarily be reduced, Defendant provides no analysis of how such a reduction would make it "economically unfeasible" to operate the Store. Defendant makes no offer of proof of how regularly his inventory is purchased and at what quantity, how he calculated the reduction of revenue stemming from the presumed reduced inventory, or how he accounted for the increased revenue from disabled patrons being able to access their desired purchases. Neither the Joint Exhibit List nor Defendant's Exhibit List [Dkts. 39 and 41] list any profit/loss documents or other financial records that would support Defendant's conclusory statement. In short, Defendant just declared compliance with federal law to be "economically unfeasible."

Second, Defendant has already waived financial wherewithal as a defense. As discussed in Plaintiff's Trial Brief, in Defendant's responses to Plaintiff's Requests for Admissions (what will be introduced as Exhibit 9), Defendant admits he is not raising a lack of financial wherewithal as part of a readily achievable defense. Further, in his Requests for Production (what will be introduced as Exhibit 10), Plaintiff requested "Documents that establish your financial wherewithal." Defendant responded with an objection that said documents were "not

relevant." Fundamental fairness, in addition to Rule 26, would prohibit Defendant from claiming that compliance is economically infeasible when Defendant has never disclosed or produced documentation of such a claim, despite being requested to do so. Trial is not by ambush.

Third, as discussed above, it is insufficient for Defendant to simply say that compliance is not readily achievable. Defendant is obliged to minimize the inaccessible elements of his Store, even where full compliance is impractical. Defendant has made no showing of alternate shelving arrangements contemplated, different types of shelving considered, or any other attempted partial barrier removal.

## V.     Unencountered Barriers

Defendant points out that "Plaintiff never encountered any violations entering the store or in the store as he never attempted to enter the store when he was unable to park his van." Dkt. 55 at 2:10-12.

This is not a defense.

The Ninth Circuit has explicitly addressed this specific argument and found it to be "ironic if not perverse..." Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

### VI. Lack of Attempt to Enter the Store

Defendant raises the issue that the plaintiff "never attempted to enter the store when he was unable to park his van." Dkt. 55 at 2:11-12.

This is irrelevant.

As discussed above, once the plaintiff has established standing by either personally encountering or being deterred by the knowledge of a barrier to his access, he may seek redress of all barriers that relate to his disability. The plaintiff personally encountered the lack of accessible parking when attempting to access the Store. He, therefore, has standing for remediation of all the barriers at the Store related to his disability.

The ADA directly refutes Defendant's line of reasoning here. The Enforcement section of the ADA states that the Act's remedies are provided to "any person who is being subjected to discrimination… or has reasonable grounds for believing that such person is about to be subjected to discrimination…" 42 U.S.C. § 12188(a)(1). The section continues: "**Nothing in this section shall require a person with a disability to engage in a futile gesture** if such person has actual notice that a person or organization… does not intend to comply with its provisions." Id; see also 28 C.F.R. § 36.501(a).

Once Plaintiff had notice that the Store did not comply with the ADA, he was not required to attempt to use its inaccessible facilities. Arguing that Plaintiff should not have standing to seek remediation of unlawful barriers beyond the parking lot would require that Plaintiff engage in a futile gesture to attempt to use the inaccessible parking facilities, despite his knowledge of their inaccessibility. This is contrary to the requirements of the ADA.

## VII. CONCLUSION

The Plaintiff respectfully requests this Court review the case law, and consider the uncontested facts. Plaintiff requests the Court enter judgment in his favor on the allegations, listed at the outset of this Brief.

*Amount of Damages, Attorney's Fees and Costs*

Under the Unruh Civil Rights Act, a plaintiff is entitled to a penalty assessment, which can be "no less than $4,000" under the Unruh Civil Rights Act. Cal. Civ. § 52(a). Thus, Plaintiff claims $4,000 in damages as a result of the barriers he encountered. Plaintiff further seeks his reasonable attorney fees, litigation expenses, and costs.

Dated: March 24, 2020                                        CENTER FOR DISABILITY ACCESS

By: /s/ Christopher A. Seabock

CHRISTOPHER A. SEABOCK
Attorneys for Plaintiff